**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

**THE ESTATE OF ANTONIO COWSER,**
**RONNIE COWSER, ANETTETTE COWSER,**
**LARRY COWSER, ANDREA COWSER, and**
**RUBY COWSER,**

$\qquad\qquad\qquad\qquad\qquad$ Plaintiffs,

v. $\qquad\qquad\qquad\qquad\qquad\qquad\qquad$ **Case No. 2:17-cv-866**

**DAVID J. CLARKE JR**.; **RICHARD E. SCHMIDT**;
**CAPT. GEORGE GOLD**; **C/O BROOKS**; and
**C/O TIARA SHEET-WALKER**;
and,
**DR. DONALD F STONEFELD,**
**Credential/License Number: 35255-20**
1120 Woodland Drive
Rhinelander, WI 54501
and,
**JOHN DOE #1**; and, **JOHN DOES #2-10**,
821 W. State Street
Milwaukee, WI 53233
and,
**MILWAUKEE COUNTY**, a Municipal Corporation,
901 N. 9th Street, Room 306
Milwaukee, WI 53223
and,
**ARMOR CORRECTIONAL HEALTH SERVICES,**
**INC**.;
and, **JOHN DOES #11-20**,
c/o Registered Agent, C T Corporation System,
8020 Excelsior Drive, Ste. 200
Madison, WI 53717;

$\qquad\qquad\qquad\qquad\qquad$ Defendants.

# COMPLAINT AND JURY DEMAND

NOW COME the above-named Plaintiffs, **THE ESTATE OF ANTONIO COWSER,**

**RONNIE COWSER, ANETTETTE COWSER, LARRY COWSER, ANDREA COWSER**, and **RUBY COWSER** by and through their attorneys, **WALTER W. STERN & ASSOCIATES,** and as for their claims for relief against the above-named Defendants, allege and show the Court as follows:

1.      This case involves Milwaukee County, the Milwaukee County Sheriff's Office ("MCSO"), Armor Correctional Health Services, Inc. ("ARMOR CORRECTIONAL"), and the individually named Defendants' methods of infringing on and violating the Constitutional, Civil, and Statutory Rights of ANTONIO COWSER ("ANTONIO") by causing ANTONIO to suffer damages, injuries, and ultimately ANTONIO's death, while under the Defendants' care and custody.  ANTONIO was subjected to inadequate and unconstitutional health and psychological care which involved the wanton and unnecessary infliction of pain, and caused his death.

2.      When ANTONIO was brought into the Milwaukee County Justice Facility ("Justice Facility" or "Facility") on or about January 10, 2011, he was suffering from acute psychological disorders, having been sentenced to twenty-four days of confinement for "Driving Under the Influence."  ANTONIO died on or about January 23, 2011 as a result of the Defendants' failure to provide any care, treatment or assistance.  As a result of the Defendants' reckless disregard and deliberate indifference, ANTONIO perished from dehydration and lack of food, which is unacceptable, and constitutes cruel and unusual punishment, contrary to the Eighth and Fourteenth Amendments to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

3.      Plaintiffs bring this action under the United States Constitution, particularly under the provisions of the Fifth, Eighth, and Fourteenth Amendments; Title 42 of the United States Code Section 1983 and 1985.

# CIVIL RIGHTS COMPLAINT

## JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and Laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' Due Process Rights, pursuant to the Fourteenth Amendment to the United States Constitution, and contrary to the ban on cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## VENUE

5.      Venue is proper in that the United States District Court for the Eastern District of Wisconsin is where most Defendants reside, and a substantial part of the events and admissions giving rise to Plaintiffs' claims occurred within this District, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6.      Plaintiff, the ESTATE OF ANTONIO COWSER (the "Estate"), represents the decedent, ANTONIO, whose serious-acute-obvious medical and psychological needs were deliberately ignored while he was in the custody and under the care/control of the NCSO, Milwaukee County, and Armor Correctional Health Services, Inc., all of which the Plaintiffs relied upon to provide adequate medical and psychological care.  As a result, ANTONIO died in the Maximum Security Unit of the Justice Facility.  At all times material hereto, ANTONIO was entitled to Constitutional rights, pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and to be treated in a manner that was not cruel and unusual punishment, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.

Case 2:17-cv-00866-NJ      Filed 06/21/17      Page 3 of 26      Document 1

7.    Plaintiffs RONNIE COWSER, ANETTETTE COWSER, LARRY COWSER and ANDREA COWSER, at all times relevant hereto, are adult citizens of the United States, residents of the State of Wisconsin, and are the biological siblings of ANTONIO, who died intestate and without any children.

8.    Plaintiff, RUBY COWSER, at all times relevant hereto, is an adult citizens of the United States and resident of the State of Wisconsin, and is the mother of the Decedent, ANTONIO COWSER.

9.    Plaintiff RONNIE COWSER is the duly appointed Special Administrator and Petitioner in a Special Administration established in Probate Court in Milwaukee County Circuit Court.

10.    Defendant, Sheriff David J. Clarke, Jr. ("CLARKE"), is an adult citizen of the United States and a resident of the State of Wisconsin.  At all times material hereto, Defendant CLARKE was the Sheriff of the Milwaukee County Sheriff's Office ("MCSO"), and in that capacity was directly responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including ANTONIO.  At all times material hereto, Defendant CLARKE oversaw, supervised and had direct control over the management and operations of the entire MCSO, including the Justice Facility, and was responsible for the MCSO's policies and procedures, as well as training.  That said CLARKE took no action regarding supplying medical and psychological care to inmates, which was a direct cause of the death of ANTONIO.

11.    At all times material hereto, Defendant CLARKE was aware of the MCSO's deficiencies, and the intentional lack of compliance with the Consent Decree, issued pursuant to Milwaukee County Circuit Court Case No. 1996-CV- 1835, at the Justice Facility, as well as

Medical Monitor Dr. Ronald Shansky's recommendations, and took no action to remedy the recorded deficiencies. At all times material hereto, Defendant CLARKE had control and authority over the MCSO/Milwaukee County's contract with Defendant ARMOR CORRECTIONAL.

12. At all times material hereto, Defendant CLARKE acted under the color of law and was deliberately indifferent to the serious medical needs and Constitutional rights of ANTONIO, and ignored the Justice Facility's staff's lack of sufficient training in policies and procedures, both written and unwritten, to adequately address ANTONIO, and other inmates, in need of medical care. He deliberately ignored providing psychological care to inmates who were seriously psychotic, and allowed these inmates to deny themselves of food and water, without adequate psychological intervention.

13. Defendant Richard E. Schmidt ("SCHMIDT"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Defendant SCHMIDT was employed by the MCSO as an Inspector and was ultimately responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including ANTONIO. At all times material hereto, Defendant SCHMIDT had oversight of the medical, clerical, correctional officers, and staff assigned to the Justice Facility. At all times material hereto, Defendant SCHMIDT also oversaw, supervised, and had control over the management and operation of the entire Sheriff's Department, and was responsible for the MSCO's policies, procedures, and training. At all times material hereto, Defendant SCHMIDT was aware of the MCSO's deficiencies and the Justice Facility's non-compliance with the Consent Decree issued pursuant to Milwaukee County Circuit Court Case No. 1996-CV-1835, as well as Medical Monitor Dr. Ronald Shansky's recommendations, but took no action to remedy

the deficiencies. At all times material hereto, Defendant SCHMIDT was deliberately indifferent to the serious medical and psychological needs, under color of state law, as well as the Constitutional rights of ANTONIO by deliberately ignoring the policy and procedures, and Consent Decree, to provide psychological care for those who were so psychotic as to deprive themselves of food and water for the purpose of committing suicide.

14.     Defendants CAPT. GEORGE GOLD ("CAPT. GOLD"), CORRECTIONS OFFICER BROOKS ("BROOKS") and CORRECTIONS OFFICER TANIA SHEET-WALKER ("SHEET-WALKER"), are adult citizens of the United States and residents of the State of Wisconsin. At all times material hereto, CAPT. GOLD was employed as a Correctional Captain at the Justice Facility by Milwaukee County and the MCSO, and was responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including ANTONIO, in January of 2011. At all times material hereto, CAPT. GOLD was assigned to supervise the Maximum Security Unit and/or Special Needs Unit (4-D) at the Justice Facility. Upon information and belief, Defendant CAPT. GOLD made the decision to transfer ANTONIO to the Maximum Security Unit at the Justice Facility. Defendants BROOKS and SHEET-WALKER were assigned to monitor those prisoners confined to the Segregation Unit, (4-D), with half-hour rounds to view and assure the safety and well-being of the prisoners, including ANTONIO. At all times material hereto, Defendants CAPT. GOLD, BROOKS and SHEET-WALKER were acting under color of state law, within the scope of his/her employment and authority, and pursuant to Milwaukee County's and the MCSO's policies, customs, and practices, written and unwritten, which caused the constitutional violations asserted herein. At all times material hereto, Defendants CAPT. GOLD, BROOKS and SHEET-WALKER knew that ANTONIO was depriving himself of food and water for purposes of committing suicide, and

Case 2:17-cv-00866-NJ     Filed 06/21/17     Page 6 of 26     Document 1

deliberately ignored providing adequate psychological care and failed to prevent it, as they had a duty to do under the color of state law, which resulted in his death on January 23, 2011.

15.     Defendant Correctional Officer JOHN DOE #1, is an adult citizen of the United States and a resident of the State of Wisconsin.  At all times material hereto, JOHN DOE #1 was employed as a Correctional Officer at the Justice Facility by Milwaukee County and MCSO, and was responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including ANTONIO, in January of 2011.  At all times material hereto, JOHN DOE #1 was assigned to the Maximum Security Unit and/or Special Needs Unit at the Justice Facility, (4-D), on the afternoon shift.  Upon information and belief, Defendant John Doe #1 failed to monitor ANTONIO at half-hour intervals to monitor his well-being and safety from the afternoon and evening of January 10th, 2011 to January 23, 2011, when ANTONIO was in the process of depriving himself of food and water to cause his own death.  At all times material hereto, Defendant JOHN DOE #1 was acting under color of state law, within the scope of his/her employment and authority, and pursuant to Milwaukee County's and the MCSO's policies, customs, and practices, written and unwritten, which were the proximate cause of the constitutional violations asserted herein.

16.     Defendants JOHN DOES #2-10 are adult citizens of the United States and residents of the State of Wisconsin.  At all times material hereto, JOHN DOES #2-10 were employed as Correctional Officers/Employees at the Justice Facility by Milwaukee County and the MCSO, and were responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including ANTONIO, in January of 2011.  At all times material hereto, JOHN DOES #2-10 knew that ANTONIO was depriving himself of food and water in an attempt to commit suicide and did nothing to intervene to prevent this catastrophic

Case 2:17-cv-00866-NJ     Filed 06/21/17     Page 7 of 26     Document 1

result. At all times material hereto, JOHN DOES #2-10 were acting under color of state law, within the scope of their employment and authority, and pursuant to Milwaukee County's and the MCSO's policies, customs, and practices which were the proximate cause behind the constitutional violations asserted herein.

17.     JOHN DOES #11-20 are unnamed adult citizens of the United States and residents of the State of Wisconsin. At all times material hereto, JOHN DOES #11-20 were employed at the Justice Facility by Defendant Armor Correctional Health Services Inc., Milwaukee County, and/or the MCSO, and were responsible for providing health care to all inmates at the Justice Facility, including ANTONIO, in January of 2011. At all times material hereto, JOHN DOES #11-20 were acting under color of state law, within the scope of their employment and authority, and pursuant to the policies, customs, and practices of ARMOR CORRECTIONAL, Milwaukee County, and the MCSO, which were the moving force behind the constitutional violations asserted herein.

18.     That, upon information and belief, certain doctors, nurses and physician assistants, and physicians of Armor Correctional Health Services, Inc. knew of other inmates that were depriving themselves of food and water, in efforts to commit suicide, and failed to provide staff to alleviate these conditions, including the conditions of ANTONIO, who deliberately sought to commit suicide by depriving himself of food and water, which was a proximate cause of ANTONIO's death on January 23, 2011.

19.     Defendant DR. DONALD F. STONEFELD ("DR. STONEFELD"), Credential/ License Number: 35255-20, with a last known address of 1120 Woodland Drive, Rhinelander, WI 54501, for all times relevant hereto, was employed or contracted by the Defendants as a psychiatrist at the Justice Facility, to assure proper mental health policies and procedures were

adhered to by correctional and medical staff while overseeing the care and custody of all inmates of the Justice Facility, including ANTONIO, and to engage in actions to prevent inmates, including ANTONIO, from committing suicide. Said intervention was totally inadequate; was deliberately indifferent; and, was essentially condoning the actions of ANTONIO in depriving himself of food and water in efforts to commit suicide, a situation that he received information about, and did nothing except prescribe medication without seeing and evaluating the patient.

20.     Defendant MILWAUKEE COUNTY, with executive offices located at 901 N. 9th Street, Suite 306, Milwaukee, Wisconsin 53233, and offices of its Corporation Counsel being located at 901 N. 9th Street, Suite 303, Milwaukee, Wisconsin 53233, at all times material hereto, was a Municipal Corporation organized under the laws of the State of Wisconsin. Defendant MILWAUKEE COUNTY established, operated and maintained the Justice Facility and, at all times material hereto, Defendant MILWAUKEE COUNTY was responsible for training and supervising the employees of the MCSO, the policies, procedures and implementation thereof at the Justice Facility, ensuring the MCSO was in compliance with the Consent Decree from Milwaukee County Circuit Court, and that inmate healthcare and safety were not ignored. Agents, unknown, were well aware of other cases where individuals were attempting to deprive themselves of food and water, and failed to provide any adequate intervention to prevent suicide, by treating the individuals involved, including ANTONIO, who was seen by one psychologist and failed and refused to do anything adequate to prevent him from a course of conduct that led to suicide by deprivation of food and water.

21.     Defendant ARMOR CORRECTIONAL, with its Principal Office located at 4960 S.W. 72nd Avenue, Suite #400, Miami, FL 33155, and Registered Agent being C T Corporation System whose address is 8020 Excelsior Dr., Ste. 200, Madison, WI 53717, is a Florida for-

profit Corporation, incorporated under the laws of the State of Florida, operating as a health care provider in the State of Wisconsin for purposes of providing medical care to inmates, and is responsible for the acts of its employees and agents involved in health care services provided to patients therein. At all times material hereto, Defendant ARMOR CORRECTIONAL provided health care services to inmates at the Justice Facility under color of law, including ANTONIO.

22.     The family members, Plaintiffs herein, and, in particular, the Decedent's mother, Ruby Cowser, was informed in 2011 that the cause of her son's death was a heart attack. She was apparently misled as to the manner and means of the death of her son, and consequently no action was taken with respect to this case until Plaintiff's counsel informed her of the results of the medical examiner, indicating a probable suicide, and misconduct and mistreatment of her son while in custody, which directly led to his death. At that point, the Plaintiffs hired counsel and have filed this Complaint, in response to an investigation and the review of the medical examiner's report.

23.     All of the Defendants are sued in their individual and official capacities. At all times material hereto, all Defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors or employees of MILWAUKEE COUNTY; within the scope of their employment as representatives of public entities, and were deliberately indifferent to the Constitutional and statutory rights of ANTONIO.

## FACTS

24.     That at all material times hereto, ANTONIO was admitted to the Justice Facility on January 10, 2011, serving a term of twenty-four (24) days confinement for a traffic offense and involuntarily detained at the Justice Facility under the direct custody, supervision, and care of the Defendants.

25.     That on January 10, 2011, during admission, ANTONIO was attributed as advising admissions staff that he intended to commit suicide.

26.     That on January 10, 2011, ANTONIO was placed in the "Special Needs" section of the Justice Facility, Pod 4-D.

27.     That while being admitted to the Justice Facility, ANTONIO did demonstrate signs of acute psychological disorders, suicidal ideations and serious psychological distress and psychosis.

28.     That prior to placement in the "Special Needs" segregation unit of the Justice Facility, ANTONIO was to be screened by correctional, medical and psychological staff to comprehensively assess ANTONIO's mental and physical health during his brief term of confinement.

29.     That at the time of admission to the Justice Facility, no blood whatsoever was drawn for screening purposes to determine if ANTONIO was under the influence of any narcotic or other drug/alcohol.

30.     That because of ANTONIO's conduct and alleged statements, staff identified ANTONIO for immediate placement in the Special Housing Unit (4D) of the Facility, which is a segregation unit, with solitary confinement in one-man cells for twenty-four hours per day.

31.     That on the evening of January 22, 2011, DR. STONEFELD was contacted at his home and advised that ANTONIO had not eaten for at least four consecutive days, was urinating in his cell (not in the toilet), and was acting erratically.

32.     That DR. STONEFELD, without examining ANTONIO, telephonically prescribed Haldol, via sub-cutaneous injection, to "calm him down," and deliberately, and

without concern for any possible ramifications, did not consult with and discuss with the patient his psychological condition and risk of suicide.

33.     That at approximately 7:21 a.m. on January 23, 2011, SHEET-WALKER reported that ANTONIO was unresponsive in his cell.

34.     Shortly thereafter, Engine 2 of the Milwaukee Fire Department arrived and, after pulling ANTONIO from his cell, began CPR and lifesaving measures, including multiple injections of atropine, epinephrine, amiodarone and Narcan, as well as defibrillation attempts to revive ANTONIO, but he died shortly thereafter.

35.     That when the MED 7 and Medical Examiner staff arrived, ANTONIO was lying clad only in his underwear on the floor in front of Cell #5.

36.     That it was further noted that in ANTONIO's cell was a Styrofoam cup with dried blood on it.

37.     That the Medical Examiner investigative staff had noted that ANTONIO's cell lacked any mattress, blanket, sheets or any other item whatsoever, except the above-noted Styrofoam cup.

38.     That on January 23, 2011, the body of ANTONIO was transported to the Milwaukee County Medical Examiner's Office to determine a cause of death, perform an autopsy, and submit samples for a toxicology screen and report.

39.     That prior to performing an autopsy, the Medical Examiner obtained medical information only from DR.  STONEFELD.

40.     That prior to the instant incarceration at the Facility, ANTONIO had previously been in custody on two prior occasions and had a well-documented history of severe psychological and mental health disorders.

41.     That upon information and belief, DR. STONEFELD a psychiatrist hired by Milwaukee County, or clinicians at the Facility, were aware of ANTONIO's psychiatric history and the psychosis and suicidality he presented with upon incarceration, and only sent a psychologist or clinician to said ANTONIO's cell on one occasion.

42.     That MCSO and the Facility do not provide housing for those suffering acute and severe mental disorders, but houses these people in Special Housing-Segregation Unit, the maximum security unit which housed ANTONIO until his death, the lack of facilities being known and understood by the Defendants connected directly with the Justice Facility.

43.     That the unknown clinicians intentionally refused to follow protocol, policy, written and unwritten, to take care, custody and treatment of ANTONIO, to prevent him from continuing the suicidal course of dehydrating and starving himself, which led directly to his death on January 23, 2011.

44.     That clinicians and staff of the Justice Facility were deliberately indifferent in terms of monitoring, treating, and caring for ANTONIO, and had there been any attempt to treat him psychologically, including force feeding and forced rehydration, ANTONIO would have survived his incarceration.

45.     That from January 10, 2011 until January 23, 2011, ANTONIO did clearly demonstrate signs of dehydration and starvation to correctional, medical and psychological staff of the Justice Facility.

46.     That had Correctional staff and supervisors, including CAPT. GOLD, BROOKS, SHEET-WALKER and JOHN DOES #1-10, monitored, treated and cared for ANTONIO, ANTONIO would have survived his incarceration in the Facility, including force feeding and forced rehydration, either intravenously or orally.

47.     That Defendants CLARKE, SCHMIDT, CAPT. GOLD, BROOKS, SHEET-WALKER and JOHN DOES #1-10, did not place ANTONIO in a Segregation Unit for suicide watch, contrary to MCSO Policy, but for alleged "detoxification" despite no drug screening having taken place on ANTONIO's upon admittance.  Such conduct was purposeful and intentional, with deliberate indifference to his life, and deliberately ignoring ANTONIO's psychosis and suicidal course of conduct.

48.     That during his time of confinement from January 10, 2011 to January 23, 2011, ANTONIO was not provided with any medication and/or psychological treatment to protect him from  severe psychological injury and suicide, by the above-named Defendants CLARKE, SCHMIDT, CAPT. GOLD, BROOKS, SHEET-WALKER and JOHN DOES #1-10.

49.     That Defendants JOHN DOES #6-8 were supervisors in charge of supervising the second and third shift at the Justice Facility, and while Defendants JOHN DOES #1-5 were on duty on January 22nd and 23rd, 2011, during which time ANTONIO was suffering from advanced stages of dehydration and starvation, a condition that was understood by said Defendants and deliberately ignored.

50.     That on December 28, 2011, Dr. Rogalska of the Medical Examiner's Office, rendered the official and final medical conclusion that ANTONIO's cause of death was "due to complications of psychotic disorder," without further explanation.

51.     That during the Medical Examiner's autopsy, there were no apparent injuries, trauma or external indications relating to a cause of death for ANTONIO.

52.     That the toxicology results provided by the Medical Examiner's findings and conclusions of December 2011 indicated elevated levels of potassium, uric acid, glucose and other indices of dehydration.

53.     That the autopsy indicated that ANTONIO suffered from a duodenal ulcer, but was bereft of any other organic abnormality which may have contributed to his death.

54.     That until the official findings and conclusions by the Medical Examiner on December 28th, 2011, Plaintiffs lacked any ability, even with due diligence, to make any reasonable or accurate determination as to ANTONIO's cause of death.

55.     That contained within the official determinations made by the Medical Examiner on December 28th, 2011, were toxicology findings taken from blood samples obtained by the Medical Examiner during ANTONIO's autopsy.

56.     That ANTONIO's toxicology report indicated **negative** findings for the presence of any illegal narcotics or trace elements thereof.  See, official report of the Milwaukee County Medical Examiner dated December 28th, 2011.

57.     That ANTONIO's toxicology report reference above indicates **negative** findings for the presence of any alcohol or trace elements thereof.  See, official report of the Milwaukee County Medical Examiner dated December 28th, 2011.

58.     That Wisconsin law, § § 350.13-15 of the Administrative Code, provides minimal living conditions for inmates confined to county jails, such as the Justice Facility, which all of the Defendants are knowledgeable of and are required to practice each day within county jails and that these Defendants, jointly and severally, did act with deliberate indifference recklessness and in total disregard for the safety, care and treatment of ANTONIO, which ultimately caused hid death on January 23, 2011, and said violation of said regulations were cruel and unusual punishment pursuant to the Eight and Fourteenth Amendments to the United States Constitution, as well as the Due Process Clause in the Fourteenth Amendment to the United States Constitution, and said actions were substantial factors in causing ANTONIO's  death.

Case 2:17-cv-00866-NJ     Filed 06/21/17     Page 15 of 26     Document 1

59.     Since 2011, there have been numerous examples of deliberate indifference to the health and safety of other inmates, and deaths that were preventable for those inmates in the Milwaukee County Jail.

60.     The instant matter involves MILWAUKEE COUNTY, MCSO, ARMOR CORRECTIONAL, and the individually named Defendants' methods of infringing on and violating the Constitutional rights of ANTONIO, and the named Plaintiffs herein, to suffer damages, injuries and ultimately ANTONIO's death.  While under the Defendants' care and custody, ANTONIO was subjected to inadequate and unconstitutional healthcare which involved the wanton and unnecessary infliction of pain and, ultimately, death.

61.     That there is a custom and practice of ignoring the medical and psychological needs of inmates, contrary to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and cruel and inhuman punishment contrary to the Eighth and Fourteen Amendments to the United States Constitution, to wit:

> a.  On October 28, 2016, Michael Madden died at the Justice Facility while in the custody of the MCSO.  At the time of Madden's arrest, he was suffering from a heart condition which he had had been since birth, as well as a heroin addiction. Despite these serious and grave medical conditions, Madden received little to no medical care while at the Justice Facility. On October 28, 2016, Madden suffered a seizure rendering him unconscious. The responding officers believed Madden was faking and failed to call a medical emergency and Madden subsequently died.
>
> b.  Shadé Swayzer was brought into the Milwaukee County Justice Facility on July 6, 2016, when eight months and one week (33 weeks) pregnant.  Several

Case 2:17-cv-00866-NJ     Filed 06/21/17     Page 16 of 26     Document 1

days later, Shadé gave birth while in custody to baby Laliah, by herself and without assistance, medical care, or any other help while locked in a disciplinary cell in the Justice Facility's Maximum Security Unit. Tragically, baby Laliah died hours later in her mother's arms as a result of the Defendants' failure to provide any care or assistance.

c. On August 28, 2016, Kristina Fiebrink died at the Justice Facility while in the custody of the MCSO. Fiebrink had been arrested and booked into the Justice Facility on August 24, 2016, while she displayed clear signs of being under the influence of heroine, alcohol, and cocaine, which were noted by staff. Despite exhibiting signs and symptoms of acute heroin and alcohol intoxication, Fiebrink was never placed on preventative detoxification protocol, seen or assessed by a medical practitioner, provided withdrawal medication, or placed on a heightened observation level while at the Justice Facility. On August 27, 2016, and into the early morning hours of August 28, 2016, Fiebrink screamed, begged, and pleaded for help in her cell, but correctional staff did not check on her. Fiebrink was subsequently found deceased in her cell by correctional staff on the morning of August 28, 2016.

d. That on April 24, 2016, Terrill Thomas died while in the custody of the Defendants of purposeful dehydration.

62. The MCSO and MILWAUKEE COUNTY entered into a Consent Decree with a class of plaintiffs (current and future inmates at the Justice Facility) in Milwaukee County Circuit Court Case No. 1996-CV-1835, which was approved by Milwaukee County Circuit Court Judge Thomas Donegan on June 19, 2001.

63.     The Consent Decree had two components: (1) Population control; and, (2) Medical care.

64.     First, the Consent Decree required that Defendant MILWAUKEE COUNTY maintain a general population cap in the Justice Facility, as well as a maximum cap on inmates held in the booking room. It provided that no inmate would spend more than thirty hours in the booking room and required better staffing and training for staff in that area.

65.     In terms of medical care, the Consent Decree required that Defendant MILWAUKEE COUNTY provide adequate, well-trained staff to provide health care to inmates and that complete screening of inmates for physical and mental health conditions be conducted. It further set out requirements for physical examinations, dental care, women's health, sick call, mental health, chronic care, and emergencies.

66.     As part of the Consent Decree, the parties agreed that a medical monitor be appointed and approved by the Court to supervise MILWAUKEE COUNTY's compliance with the Consent Decree's provisions while the court retained jurisdiction over the case until the County was in full compliance with the terms of the Consent Decree.

67.     At all times material hereto, Dr. Shansky was the Court approved medical monitor in charge of monitoring the County's compliance with the Consent Decree.

68.     During his tenure, Dr. Shansky documented a series of systematic problems in the Jail's healthcare system.

69.     Specifically, Dr. Shansky found that, "health care staffing shortages contribute to delays in access to care and deterioration in quality of care for prisoners; reductions in the number of correctional officers contribute to dangerous lack of access to health care and inability to detect health crisis, and may have played a role in some of the recent deaths at the Jail; that

continued turnover in health care leadership positions contribute to lack of oversite of quality of care; and that the electronic record has serious deficiencies and must be altered or replaced."

70.     That the deliberate indifference to the health, both physical health and mental health, of inmates, including ANTONIO, has led to a pattern and practice which was a proximate cause of ANTONIO's death on January 23, 2011.

71.     As a result of the lack of health care staff and deficient medical services at the Justice Facility, correctional officers often improperly attempt to substitute their untrained judgment for that of medical professionals.

72.     The lack of staff at the Justice Facility creates severe problems for the County's ability to respond timely and appropriately to medical emergencies and needs, which is exactly what contributed to ANTONIO's untimely, horrific, and preventable death.

73.     Physical and psychological exams performed by Justice Facility staff are incomplete and inadequate, often lacking a referral to an appropriate medical professional.

74.     That untrained correctional officers are forced to make medical and psychological decisions concerning the health and welfare of prisoners, while lacking in formal training.

75.     That inmates with acute medical and psychological conditions have suffered for days, failed to receive appropriate medical care or referrals and subsequently died in the Justice Facility.

76.     On several occasions, Dr. Shansky found that the County was not performing medical emergency drills as required by the Consent Decree.

77.     The County has repeatedly failed to conduct investigations into deaths that occurred in their facilities, thereby allowing staff to avoid being disciplined or prosecuted for

their actions and creating a systemic and routine practice of deliberate indifference to the health and welfare of inmates, which was a proximate cause of ANTONIO's death.

78.     The Consent Decree is still in force and the above listed failures have never been corrected, although the County, CLARKE, and/or Armor Correctional have been personally aware of the problems that for over a decade have led to a culture of deliberate indifference, which was a proximate cause of the death of the Decedent.

79.     Defendants MILWAUKEE COUNTY, CLARKE, and/or ARMOR CORRECTIONAL, each had a duty to ensure that reasonable measures were taken to provide for the safety of inmates at the Justice Facility, including ANTONIO.

80.     All Defendants were on notice of the unconstitutional conditions in the Justice Facility and the problems found by Dr. Shansky when he examined the Justice Facility as part of the Consent Decree, and each failed to rectify these conditions, and each Defendant received and reviewed the deficiencies, which was a substantial factor in ANTONIO's death, and refused to provide treatment to those in similar circumstances to ANTONIO, i.e., psychotic and suicidal.

81.     The above acts and omissions of all Defendants, and each of them, constitute a course of conduct and failure to act amounting to willful, wanton and deliberate indifference to the rights, health, safety, and welfare of ANTONIO, and those similarly situated, resulting in the deprivation of their constitutional rights, pursuant to the 8th and 14th Amendments to the United States Constitution and the Due Process Clause to the United States Constitution.

82.     As a direct and proximate result of the acts and omissions of the Defendants, as set forth above, Plaintiffs RONNIE COWSER, ANETTETTE COWSER, LARRY COWSER and ANDREA COWSER have suffered the loss of companionship and society of their brother, ANTONIO, and pecuniary loss of the Estate.

Case 2:17-cv-00866-NJ    Filed 06/21/17    Page 20 of 26    Document 1

83.     As a direct and proximate result of the acts and omissions of the Defendants, as set forth above, Plaintiff RUBY COWSER, has suffered from the loss of companionship and society of her son, ANTONIO.

84.     As a result of Defendants SCHMIDT, CAPT. GOLD, BROOKS, and SHEET-WALKER refusal to provide ANTONIO medical and mental health attention, ANTONIO died in the Maximum Security Unit at the Justice Facility.

85.     As to Defendant CLARKE, he had notice and knowledge of a custom, practice and routine conduct, which deprived the inmates, including ANTONIO, of proper psychiatric attention, including intervention to prevent suicide by dehydration and starvation.

86.     Defendant CLARKE further had notice and knowledge of the lack of psychiatric treatment provided inmates, and condoned such practice because of the Consent Decree and grievances filed by other inmates prior to ANTONIO's death.

87.     That as alleged in the above paragraphs, ANTONIO was deprived of Due Process pursuant to the Fourteenth Amendment to the United States Constitution, and the Defendants intentionally and in reckless disregard of his constitutional rights, further denied ANTONIO rights pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.

88.     That MILWAUKEE COUNTY had knowledge and notice of the above abridgments of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and did nothing to address said deficiencies.

89.     That the conduct of Defendants CLARKE, SCHMIDT, CAPT. GOLD, BROOKS, SHEETS-WALKER, and JOHN DOES #1- 20, were committed pursuant to, and in execution and implementation of, the color of  state law, and officially sanctioned policies, practices, regulations and/or customs of the Justice Facility; and each said Defendant exhibited a deliberate

indifference in violation of the Eighth and Fourteenth Amendments to the United States

Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States

Constitution, to ANTONIO's serious medical and psychological needs, and in violation of 42

U.S.C. § 1983, causing the constitutional deprivation of ANTONIO's individual rights, to wit:

    a. Deliberately failing to properly train the Justice Facility staff, including medical personnel providing medical care to residents therein, to properly assess and determine when a resident is facing a medical emergency;

    b. Deliberately ignoring ANTONIO's immediate needs for medical treatment and mental health;

    c. Deliberately failing to transport ANTONIO to an appropriate hospital or mental health facility for immediate medical care and treatment;

    d. Deliberately failing to seek appropriate medical attention for an inmate in mental distress;

    e. Deliberately failing to seek appropriate medical attention for an individual who is psychotic and in the process of committing suicide by refusing to eat or drink;

    f. Deliberately failing to render medical care to a man succumbing to dehydration;

    g. Deliberately failing to conduct timely mandated security/rounds;

    h. Deliberately failing to conduct meaningful security checks/rounds;

    i. Deliberately and willfully failing to notify appropriate doctors, nurses, and medical staff of ANTONIO's perilous dehydration;

    j. Deliberately failing to hire, train, maintain, and implement competent correctional staff at the Justice Facility;

k.  Deliberately failing to hire, train, maintain, and implement competent medical staff at the Justice Facility;

l.  Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the correctional staff at the Justice Facility, thereby encouraging the wrongful acts and omissions complained of herein;

m.  Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the medical staff at the Justice Facility, thereby encouraging the wrongful acts and omissions complained of herein;

n.  Deliberately allowing a custom and/or practice at the Justice Facility of deliberately ignoring complaints of inmates or their need for medical or mental health attention;

o.  Deliberately, willfully, and wantonly withholding required medical care to ANTONIO when they had actual knowledge of ANTONIO's serious medical and mental health conditions requiring immediate attention;

p.  Deliberately, willfully, and wantonly failing to ensure that the Justice Facility was properly and adequately staffed; and,

q.  Deliberately, willfully, and wantonly failing to ensure the Consent Decree was complied with.

r.  Deliberately denied said inmate water to sustain health and life.

90.  That as a direct and proximate result of the deliberate, willful, wanton, and reckless violation of ANTONIO's Constitutional Rights by Defendants, ANTONIO suffered a wrongful death, and extreme pain and suffering; as well as compensatory and punitive damages as a result of these violations.

91.     That as a direct and proximate result of the deliberate, willful, wanton, and reckless violation of ANTONIO's Constitutional Rights by Defendants, Plaintiff RUBY COWSER suffered and will continue to suffer loss of companionship and society of her son, and Plaintiffs RONNIE COWSER, ANETTETTE COWSER, LARRY COWSER and ANDREA COWSER suffered loss of companionship and society of their brother, and the pecuniary loss of his Estate.

92.     Any and all other damages, including but not limited to attorney's fees and costs, are recoverable under 42 U.S.C. § 1988.

93.     Plaintiffs hereby reassert and realleged each and every allegation contained in Paragraphs 1 through 95, as if more fully set forth herein.

94.     That Defendant MILWAUKEE COUNTY and ARMOR CORRECTIONAL failed to adequately train doctors, nurses, clinicians and other medical staff at all times material to this Complaint, on how to care for mentally ill inmates, persons in their custody suffering from serious/acute/obvious medical conditions, and individuals in their custody in need of immediate medical attention; how to perform life-saving procedures; how to recognize serious medical emergencies; how to react to serious medical emergencies, how to conduct rounds on special needs inmates; and, how to conduct intake screenings, amongst other failures.

95.     That the failure of these Defendants to adequately train and supervise its medical and clinical staff concerning several key issues such as how to care for mentally ill inmates, persons in their custody suffering from serious/acute/obvious medical conditions, and individuals in their custody in need of immediate medical attention; how to perform life-saving procedures; how to recognize serious medical emergencies; how to react to serious medical emergencies; how to conduct rounds on special needs inmates; and how to conduct intake screenings;

CIVIL RIGHTS COMPLAINT

demonstrated a deliberate indifference on the part of Defendants MILWAUKEE COUNTY and ARMOR CORRECTIONAL as to whether the failure to adequately train and supervise their medical and clinical employees would result in the violation of the Constitutional, Civil, and Statutory Rights of individuals in their care, such ANTONIO.

96.     That the above-mentioned failure to adequately train and supervise medical and clinical staff providing medical and mental health care at the Justice Facility was a direct and proximate cause of the violations of the Constitutional, Civil, and Statutory Rights of ANTONIO.

97.     That Defendant CLARKE had notice of the above-mentioned violations of the Eighth and Fourteenth Amendments to the United States Constitution, and Due Process Clause of the Constitution, by previous incidents, previous deaths, and receiving grievances from other inmates.

98.     That the Defendants herein, jointly and severally, owed ANTONIO a special duty to protect his health, safety, and life as ANTONIO was a Ward of the County as a result of his status as an inmate at the Justice Facility.

99.     That as to each and every violation of the rights specified under Title 42 § 1983, compensatory damages, as above stated, are appropriate as to each and every Plaintiff, including the Estate, and punitive damages are appropriate because the conduct of each and every Defendant was a proximate cause of death, and the conduct was reckless and/or malicious, justifying an award of punitive damages.

WHEREFORE, the Plaintiffs respectfully demand judgment in favor of Plaintiffs against each of the Defendants, jointly and severally, awarding Plaintiffs:

1.     Compensatory damages in an amount to be determined by the Jury;

2.      Punitive damages in an amount to be determined by the Jury;

3.      Reasonable attorneys' fees and costs expended in this action, pursuant to Title 42 U.S.C. 1988, as awarded by the Court;

4.      The Plaintiffs request that the Court enter an Order of a Consent Decree specifically specifying the terms and conditions under which people who are suicidal should be treated in a humane and appropriate way to prevent suicides in the Milwaukee County Jail; and

5.      For such other and further relief as this Court deems just and proper.

**THE PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY**

Dated at this 12th day of June, 2017.

By:      s/*Walter W. Stern* III
         ATTY. WALTER W. STERN, III
         Bar No. 1014060
         920 85th St., Suite 123
         Kenosha WI 53143
         **Phone:** (262) 880-0192
         **Email:** wstern1@wi.rr.com